EDWARD E. GOLD et al., Appellants, *v.* JAMES CLYNE et al., Respondents.

Under the provision of the act. of 1875, providing for the organization of business corporations, which makes the directors of a corporation organized under the act liable to creditors, because of a failure to file an annual report (§ 18, chap. 611, Laws of 1875), it is essential to the liability of one sought to be charged that his occupancy of the relation of director, the default and the debt of the corporation have existence at the same time.

In an action against the directors of such a corporation for a failure to file a report for the year 1885, it appeared that the period of the corporate life, as stated in its certificate, expired in June of that year; that the indebtedness sought to be recovered was upon an executory contract, by the terms of which the liability of the corporation was dependent upon performance, by plaintiff, and that the contract was not performed so as to entitle plaintiff to the installments unpaid until after the dissolution of the corporation. *Held,* that defendants were not liable; that the provision of the act (§ 38) declaring that the dissolution of a corporation created under it shall not take away or impair any remedy given against it, its stockholders or officers, for any liability incurred previous to its dissolution, did not apply, as the indebtedness in question had not then been incurred.

A report was made and filed in January, 1886. *Held,* that no presumption arose from this fact as matter of law; that the term of the existence of the corporation had been extended as authorized by the act (§ 29).

Reported below, 58 Hun, 419.

(Argued May 5, 1892; decided October 1, 1892.

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made December 31, 1890, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

On April 23, 1884, the plaintiffs entered into contract with the Central Park Building Company of the city of New York, whereby they undertook to put into four apartment buildings, known as " Valencia," " Tolosa," " Granada," and " Saragosa," complete steam heating and ventilating apparatus for the sum of $25,000, which the company agreed to pay as follows :

| | |
|---|---|
| " 1st. Payment when all the steam and return pipes are in............................ | $7, 666  66 |
| " 2d. Payment when all the radiators are connected ............................... | 7, 666  66 |
| " 3d. Payment when the whole work is finished. | 7, 666  68 |
| " 4th. Payment when the apparatus shall have had one winter's trial to the satisfaction of the architect ............................ | 2, 000  00 |
| | " $25, 000  00" |

The plaintiffs proceeded with the work. The first and second installments, amounting to $15,333.32, became due and were paid. The third installment became due in December, 1885, and the last one the first of March, 1886.

The company was a corporation created in June, 1883, and the period of its duration stated in the certificate was two years. The defendants became directors of the company. No annual report was filed in 1885. The referee determined that the defendants were not, by reason of such default liable to the plaintiffs.

Further facts appear in the opinion.

*Ira D. Warren* for appellants.

*Geo. A. Strong* for respondents.

BRADLEY, J. The Central Park Building Company was incorporated pursuant to the provisions of chapter 611 of Laws of 1875 ; and at the time the contract was made with the

plaintiffs, the company was engaged in building four apartment-houses in the city of New York, known as the Navarro flats. The contract with the company by which the plaintiffs agreed to put into the buildings heating and ventilating apparatus for twenty-five thousand dollars, was made in April, 1884. The company undertook to pay the amount in four installments, three of them at certain stages of the work, and the fourth after a time specified for its trial and approval. The first two amounting to $15,333.32 were paid; and the plaintiffs having completed the work in December, 1885, were then entitled to the third installment of $7,666.68, and to the balance March 1, 1886. They remain unpaid. The purpose of this action is to recover of the defendants, who were directors of the company, the amount so remaining unpaid, and it is founded upon default in filing a report in 1885, as required by the statute, which provides that "Every such corporation shall annually, within twenty days after the first of January, make a report, which shall state the amount of capital, and the proportion actually paid in, the amount and, in general terms, the nature of its existing assets and debts, and the names of its then stockholders, and the dividends if any declared since the last report, which report shall be signed by the president and a majority of the directors, and shall be verified by the oath of the president and secretary of such corporation and filed in the office of the secretary of state, and if any such corporation shall fail so to do, all the directors thereof shall be jointly and severally liable for all the debts of the corporation then existing and for all that shall be contracted before such report shall be made." (L. 1875, ch. 611, § 18.)

The duration of the corporation, as set forth in the certificate provided for by the statute (Id. § 3), was two years, which expired with the 16th day of June, 1885. And the defense rests upon the ground that it ceased to exist at that time, and that the plaintiffs' claim was not a debt then existing of the corporation. It is essential to the liability of directors by virtue of the statute, for default in filing a report, that their occupancy of that relation, such default and the debt of the

corporation have existence at the same point of time. (*Shaler, etc., Co.* v. *Bliss,* 27 N. Y. 297 ; *Duckworth* v. *Roach,* 81 id. 49.) There would be no difficulty in bringing all those elements within the same period of time if the pendency of the unexecuted contract were sufficient to furnish the existence of a debt of the company. The indebtedness of the corporation was dependent upon performance of the contract by the plaintiffs, and did not until then arise. Then and not until that time did it become a debt of the company. (*Garrison* v. *Howe,* 17 N. Y. 458 ; *Whitney Arms Co.* v. *Barlow,* 68 id. 34.) In that view the plaintiffs' claim never was a debt existing against the company, because its period of duration as such terminated, and it ceased to have corporate existence while the contract in respect to the moneys sought to be recovered was executory and the liability of the corporation was unperfected and contingent.

In *Jones* v. *Barlow* (62 N. Y. 202), it was held that the liability of directors dependent on default in filing a report, is measured by the obligation of the company, and that the remedy against it and them is concurrent. And such was the view of the court as expressed in *Rector, etc.,* v. *Vanderbilt* (98 N. Y. 170, 173, 174).

We do not intend here to hold that the directors may not be chargeable, after dissolution of a corporation, for a debt before then existing and becoming due after such dissolution in case it was then in default in filing a report, nor is it necessary to express any opinion on that question in the present case.

Our attention is called to the provision of the statute that " The dissolution for any cause of any corporation created as aforesaid, shall not take away or impair any remedy given against such corporation, its stockholders or officers, for any liability incurred previous to its dissolution." (L. 1875, ch. 611, § 38.) And it is urged that a liability of the corporation was incurred when the contract was made, and existed at the time of its dissolution, although it did not become an existing debt until December, 1885, when the work was finished, and

that the default in respect to the report then effectually existed. The construction thus contended for of the provisions of section 38 would seem to give to it the effect of creating a liability of the directors, and not merely saving or continuing one established before and existing at the time of the termination of the corporate existence of the company. As has been already observed, they were not liable when the corporation ceased to exist, although it was then in such default; and as after the death of the company, it could make no report, the directors were not chargeable with liability founded upon such omission. It has been held that, even after a *de facto* dissolution, no report is necessary for the protection of directors. (*Huguenot N. Bank* v. *Studwell*, 74 N. Y. 621; *Losee* v. *Bullard*, 79 id. 404; *Bonnell* v. *Griswold*, 80 id. 128.) The requisites of their liability and the conditions upon which it depends are found in section 18. And unless the provisions of section 38 are so construed as to extend the existence of the corporation, or deny to it death as to its executory contracts until the contingent liability created by them has ripened into existing debts, it is difficult to see any support in the default for the charge made against the defendants personally.

The provisions of those sections of the act of 1875 are substantially the same as the provisions of sections 12 and 19 of chapter 40, Laws 1848; and, therefore, the cases in which those provisions of either statute have been considered are applicable to those of the other. And while there are many in which the question of the liability of directors or trustees under section 12 of the act of 1848 has arisen, our attention is called to none other than the one at bar, in which the provisions of section 19 of that act containing the same as those of section 38 before mentioned, have had special consideration. As these statutes, so far as they are intended to charge the trustees, are penal in character, it has been the policy of the courts not to enlarge their operation by construction, but rather to limit the effect of them to the import required by their terms. By the provision that the dissolution of a corporation should not take away or impair any remedy given against it or

its officers for any liabilities before then incurred, it does not appear to have been the intent to do more than to save the rights of creditors for all the substantial purposes of remedy as they existed at that time against the company and its trustees, and to include liabilities which had then arisen. The view in support of the contention that the default in filing a report in 1885 continued and was effectual as such in December of that year, when the plaintiffs finished the work, would require the conclusion that for the purposes of their remedy the life of the company was extended to that time, notwithstanding the term of its duration taken by its charter had expired six months before, because to bring the case within the provisions of section 18, upon which the liability of the directors must depend, the plaintiffs' claim must have been an existing debt of the corporation within the time such default continued. The liability to pay the debt when it should arise was given by the undertaking of the corporation in the contract, and in that sense the liability accrued prior to its dissolution, but when the debt arose from performance of the contract, it did not become a debt against the corporation for the reason that the company then had no corporate existence, and an element essential to the liability of the trustees was wanting. But the debt was, nevertheless, chargeable against the assets of the deceased corporation, because the contingent liability incurred during its life became absolute after its death. And for the purposes of relief, proceedings were available against its representatives as they may be in like case against the personal representative of a deceased person. With that in view, the statute provides that upon the dissolution of any corporation, unless others shall be appointed by the legislature or some court, the directors or managers of the affairs of the corporation at the time of dissolution shall be the trustees of the creditors and stockholders, with full power to settle its affairs, and for that purpose may sue and are liable to creditors, etc., to the extent of the property of the dissolved corporation that shall come to their hands. (1 R. S. 601, §§ 9, 10.) Then there is no corporation to be made a party, nor any to support

a judgment against it in an action pending at the time of the dissolution, but for the purposes of the entry of a judgment in such case, the action must be revived against the representatives. (*McCulloch* v. *Norwood*, 58 N. Y. 562.)

The defendants ceased to be trustees on the death of the corporation; and it is not merely because they were such up to that time that they may for want of others become its representatives for the purpose of closing up the affairs of the corporation, but because they were constituted such by the statute. It is only necessary for the protection of directors against liability upon a particular debt against their corporation that the requisite report be filed prior to the existence of such debt. The making and filing of a report is the corporate act of the company. (*Cornell* v. *Roach*, 101 N. Y. 375.) And after the corporation has ceased to exist there are no trustees or directors, no report can legitimately be made or filed, nor can any default thereafter arise for the want of it. The default in that respect preceding the dissolution continues effectual in support of the remedy to charge the trustees thereafter upon a liability incurred for that cause by them during the existence of the corporation. And such within the meaning of section 38 is a liability incurred by the officers of a corporation previous to its dissolution. The present is not such a case. And, therefore, no support for the liability of the defendants for the failure to file a report is brought within the statute.

It is also urged that although by the terms of the certificate for formation of the corporation its term of duration was made two years, the presumption arose from the fact that a report was made and filed January 21, 1886, that its life was extended, which could have been done pursuant to the statute which provides that "whenever any corporation organized under this act has fixed the duration of its corporate existence for a less period than fifty years, it may at any time extend the term of its existence beyond the time mentioned in the original certificate of incorporation by the consent of the stockholders owning two-thirds in amount of the capital stock of

the corporation, in and by a certificate to be signed by such stockholders" duly acknowledged or proved and filed in the office of the secretary of state. (L. 1875, ch. 611, § 29).

While it may be difficult to account for the filing of the report in 1886, otherwise than upon the assumption by the officers making it that the corporation was then in existence, the fact that the report was then made did not as matter of law raise the presumption that the requisite or any proceedings for that purpose had been taken to extend its life. Nor does it appear by the record that such question was specifically raised by any request to find or otherwise by any exception. And the same may be said of the suggestion of estoppel in support of the defendants' liability. No question in the record arises upon either of those propositions to justify on this review interference with the conclusion of the court below.

It follows that the judgment should be affirmed.

All concur.

Judgment affirmed.