Haight, J.
This action was brought to set aside four judgments recorded against the Evening Express Printing Co., together with the executions issued thereon and the sales made thereunder, and to recover the value of the property sold. The trial court has found as facts that upon the 3d day of March, 1882, judgment was entered in favor of the defendant Hart against the Evening Express Printing Co., for the sum of $10,086.27; and that at the same time another judgment was entered in favor of the City Bank of Rochester against the same company for $7,066.15; and also at the same time another judgment was entered in favor of Dorcas Miller against the same company for $3,115.76; and that thereupon executions were issued upon these judgments to the sheriff of the county, who levied upon the property of the judgment-debtor. The trial court further found as facts, that at the time these judgments were obtained, the Evening Express Printing Company was an insolvent corporation, and had been for a long time prior thereto; and that this fact was known to the parties who recovered the judgments; that one Upton was the president of the city bank, and that the defendant Hart had arranged *142 with him that their respective claims against the printing company should stand equal in respect to proceedings taken to collect them, and if the city bank should bring suit upon its claim that suit upon Hart’s claim should also be brought and that the note representing the defendant Hart’s claim, was left with Upton, the president of the city bank; that prior to the bringing of the actions, Upton - had a conversation with one Clark D. Tracy, a director and the secretary and treasurer and financial manager of the Express Printing Company, and made arrangements with him by which actions were to be brought on behalf of the city bank and the defendant Hart, and also upon a note held by the defendant Dorcas Miller, and that service of the summons was to be made upon Tracy, who was to keep the same secret and not report the fact to the president and other directors of the company until judgments could be perfected in such actions by default; that the actions were commenced in accordance with such arrangement, and the service of summons in such action was made upon Tracy as one of the directors and officer of the Express Printing Company, who did keep the fact of such service from the knowledge of the other officers of -the company until the judgments which we have already mentioned were entered by default; that thereupon the defendant George Ellwanger, who was a large creditor of the printing company and the father of its president, on hearing of the recovery of these judgments and of the levy of the executions made thereunder commenced an action upon his claim against the company; that the company appeared in such action by an attorney and offered judgment in his favor for the amount of his claim, which was accepted and on the 6th day of March, 1882, judgment was entered thereon for the sum of $4,225.94.
It was further found that an action was brought by the attorney-general of the state, in the name of the people, against the company on the 10th day of March, 1882, to-wind up the affairs of the corporation on the ground of its insolvency, and an injunction was issued restraining all-creditors of the company from beginning actions or from taking further steps to levy, seize upon, or sell the property of the company; that the same attorneys appeared for the attorney-general in this action that appeared for George Ellwanger in his action against the company; that the injunction order was served upon the City Bank and the defendants Hart and Miller; that upon an order to show cause why the injunction order should not be continued, an order was entered continuing the same until the special term to be held in Eochester on the 27th day of March, 1882; that on' the 10th day of April thereafter final judg *143 ment was entered in that action, in which the plaintiff was appointed the receiver of the corporation; that prior thereto and on the 8th day of April, the defendants, the City Bank, Hart, Miller and EHwanger, entered into an agreement in writing reciting the fact that it was claimed that the first three judgments obtained against the company were invalid, and in consideration of the promise that the defendant, George Ellwanger, would not personaHy contest the validity of the executions issued upon those j'udgments, they agreed that a sale of the property levied upon should take place under the executions and that there should be a pro rata distribution of the proceeds of the sale in the payment of their j'udgments; that the sale took place in accordance with such agreement, and that at tire time of making this agreement the defendant EHwanger was aware and understood the facts under which the City Bank and the defendants, Hart and MiHer, had obtained their judgments; and that there was a large number of other creditors of the Express Printing Company at the time to whom a large amount was owing.
The trial court found that the transaction was in violation or 1 B S., 603, section 4, and judgments were given in the case against the defendants Hart, MiHer and EHwanger, but as to the receiver of the City Bank, the court held and decided that the action was not brought within three years from the time when the cause of action accrued, and therefore it was barred by the statute of Hmitations.
As to the defendant Hart, we shaU not stop to discuss the evidence upon the merits for reasons which wiH subsequently appear. As to the defendant Ellwanger, the admissions and denials set forth in the answer refer to the complaint by folios, and as printed in the appeal book, we are unable to teU what is admitted or denied. The answer does not in this regard conform to the provisions of section 22 of the Code of Civil Procedure, and the only questions which we feel caHed upon to consider are the exceptions. Caulkins v. Bolton, 98 N. Y., 511-514; Crosly v. Cobb, 3 How. (N. S.), 37.
The statute, under which a recovery is sought in this action, provides that “wherever any incorporated company shall have refused the payment of any of its notes or other evidences of debt in specie or lawful money of the United States, it shall not be lawful for such company, or any of its officers, to assign or transfer any of the property or choses in action of such company, to any officer or stock - holder of such company, directly or indirectly, for the payment of any debt; and it shall not be lawful to make any transfer or assignment, in contemplation of the insolvency of such company, to any person or persons whatever; and *144 every such transfer and assignment to such officer, stockholder or other person, or in trust for them or their benefit, shall be utterly void.”
It is claimed that the arrangement under which these judgments were obtained, and the agreement between the judgment creditors under which' the property was sold, operated as a transfer of the property of the corporation to these parties by the officers thereof in conteriiplation of insolvency, in order to give them a preference over the other creditors of the corporation. Kingsley v. The First National Bank of Bath, 31 Hun, 329.
It will consequently be observed that the vital question of fact in the case is as to whether or not the agreement between Upton and Tracy, the secretary and treasurer, was as found by the court. For the purpose of establishing this fact the evidence of Upton was read, which had been taken upon a proceeding before referee Foote, Upton having died previous to the trial of this action. It appears that the Evening Express Printing Company issued a daily paper and that the levy was made upon the machinery, type and apparatus by which the paper was printed; that it was thought advisable that the issue of the paper should continue during the time that the property was advertised for sale, and for that purpose the defendants in this action contributed certain sums of money therefor; that after the plaintiff was appointed receiver in this action he entered upon his duties as such and converted such assets as remained into money, and then petitioned the court for an accounting and distribution; that the City Bank of Rochester presented a claim to him, as such receiver, for the money so contributed by the parties for the purpose of carrying on the paper, and claimed that the money so advanced for that purpose should be paid by the receiver in full; that the plaintiff, in his petition, referred to the claim so made upon him, and asked that a referee may be appointed to examine his accounts, and to report thereon, and also to hear and determine the claim of the City Bank. The court thereupon appointed Mr. Foote referee, and it was upon the hearing before him that the evidence of Upton was taken, which was read upon the trial of this action, under objection and exception by the defendants Hart and Ellwanger. Upon the direct examination of that hearing Mr. Upton gave evidence in reference to the money that was advanced.
Mr. Cooke, the counsel for the plaintiff in this action, on cross-examination, then asked and Upton testified to the arrangement with Tracy found by the court. Section 830 of the Code provides that: “Where a party has died since the trial of an action or the hearing upon the merits of a *145 special proceeding, the testimony of the decedent or of any person, who is rendered incompetent by the provisions of the last section, taken or read in evidence at the former trial or hearing, may be given or read in evidence at a new trial or hearing by either party subject to any other legal objection to the competency of the witness, or to any legal objection to his testimony or any question put to him.”
It will be observed that the provisions of the Code have reference to the parties to an action or special proceeding. Upton was not a party to the proceeding before Foote, he was merely a witness on behalf of the City Bank, who was the party presenting the claim.. It consequently does not appear to us that his evidence was brought within the provisions of the Code. Bradley v. Mirick, 91 N. Y., 293.
But it is urged that his evidence was competent under the common law. The rule at common law, is, in substance that if a witness has been examined in a legal proceeding between the same parties, involving the same questions, so that the counsel for either party could have the right to examine and cross-examine, then the evidence of such a deceased witness, may be used. 1 Phillips on Evi., 400, note 110.
So far as appears from the record of the proceedings before Foote, the defendants Hart and Ellwanger were not parties to that proceeding and consequently cannot be bound be the testimony given thereon. But it is claimed that the proceeding instituted on behalf of the City Bank was for their benefit in part, they having contributed the funds in part through the City Bank, to continue the issue of the paper, that, therefore, they were parties in interest, if not parties appearing upon the record. If, for the sake_ of the argument, we concede that they were in fact parties to the proceeding, still there is a difficulty about this evidence being competent as against them. In order to make it competent it must be given in a legal proceeding between the same parties, involving the same questions, so that counsel for either party may have the right to examine and cross-examine. As we have seen, the claim presented on behalf of the bank against the receiver was for money advanced to carry on the paper after the levy had been made. The question at issue upon this trial and upon which this evidence was received is as to whether or not there was a fraudulent conspiracy between Upton, representing the City Bank, and the defendant Hart with d director, the secretary and treasurer of the company, by which these judgments should be obtained, surreptitiously, to the end that the property of the corporation should be *146 transferred to them through a levy under an execution. The questions involved are not the same, but are entirely different, one having no bearing upon the other. It, therefore, does not appear to us, that the evidence was competent under the Code or the common law rule.
Again, it appears that the defendant Hart subsequently presented a claim against the receiver of the city bank for his share of the funds contributed through the bank to carry on the paper, and this claim was referred by the court to Mr. Benton, and upon the hearing before Benton, after Hart had given his testimony, Upton was sworn as a witness on behalf of the receiver of the city bank, and that after he had given his evidence the defendant Hart gave in evidence the testimony of Upton, taken before referee Foote, for the purpose of contradicting his evidence given before referee Benton. It is now contended that by giving Upton’s testimony, taken before referee Foote, in evidence, before referee Benton, that Hart, by so doing, adopted it, and in effect asserted and declared that it was true, and that it is consequently proper. evidence against him upon this trial. The question thus presented has been submitted to the court without any citation of authority to sustain it, and in the examination which we have been able to make we have found no authority in this state upon the subject. ‘ , .
, . The rule that when a person engaged m conversation with another makes a statement which the other listens to in silence, interposing no objection when, under the circumstances, the silence is of such a nature as to_ lead to the inference of assent, may be put in evidence against him, is elementary and familiar to all students of the law. But in judicial proceedings the rule does not prevail, for defendant’s silence is not evidence against him as assenting to charges judicially made. Childs v. Grace, 2 C. & P., 193.
In the case of Blanchard v. Hodgkins (62 Me., 120) it was held that the statement of a witness made at a prior hearing of the same case which the party was at liberty to contradict, he being entitled to be sworn as a witness in the case, might be received as tending to show an iniplied admission that the bargain was as stated by the witness. But at common law we do not understand that the testimony of witnesses given on behalf of a party upon one trial could afterwards be used against the party by whom it was adduced on another trial. See 2 Wharton Law of Evidence, § 1139, and authorities there cited.
In the case of Wilkins v. Stidger (22 Cal., 231) it was held that a party to an action is not bound by, or held to admit as true in another action, statements made by his *147 witnesses during the trial of a case because he does not deny or contradict them at the time.
In the case of Ayers v. Wattson (57 Pa. S., 360) it was held that a party who calls a witness is not estopped by a statement by the witness which is immaterial to the issue and which cannot affect the result.
•In the case of McDermott v. Hoffman (70 Pa. St., 31, 52) it was held that by producing a witness the party admits for that case that he is creditable, but does not admit that everything he says is true. He may contradict his witness or show he was mistaken, but he cannot impeach his veracity; that the evidence of a witness produced by a party on the trial of a cause cannot be used against him as an admission in any subsequent suit between other parties and relating to another subject of controversy
As to the evidence under consideration, it was read on behalf of the defendant Hart upon the hearing of a controversy between himself and the receiver of the City Bank. The plaintiff in this action was not a party to or in anywise interested in that proceeding. It was consequently between other parties. The claim made by Hart against the receiver of the City Bank was, as we have stated, for moneys advanced through it to continue the printing of the paper The issue involved was different and had no connection with the question of the conspiracy complained of in this action. It furthermore appears that it was not read as evidence in chief for Hart, but was read to contradict evidence that Upton had given upon that hearing. It consequently does not appear to us that there was such an adoption or assertion that it was true as to make it competent evidence against the defendant Hart in this action.
It is claimed, however, that if the evidence of Upton was improperly received, still there should not be a reversal for the reason that there is other evidence to sustain the finding The other evidence upon the subject was given by Tracy, He was a stockholder, a director and the secretary of the corporation at the time it was dissolved by the judgment of this court. He was, therefore, an interested party within the rule that requires the submission of his evidence to the jury or the court charged with the duty of determining the facts. His credibility being involved, this court, on review, cannot say as matter of law that his evidence should be taken as true.
. The plaintiff has appealed from so much of the judgment as dismisses the complaint against Hobert F. Atkinson, the receiver of the City Bank. The case was not served upon the attorneys for Atkinson, and consequently this appeal must be determined upon the judgment roll The court has found as facts that the property of the Evening Ex *148 press Printing Company was sold at sheriff’s sale under executions April 19, 1882; 'that Atkinson was appointed receiver of the City Bank December 2, 1882, and that this action was commenced December 3, 1885. The trial court further found that this action was brought to recover damages for taking, detaining or injuring personal property, and that the cause of action accrued and was complete at the making of the sheriff’s sale under the executions, and that as to the receiver, Atkinson, the action was barred under subdivision 4, section 383 of the Code of Civil Procedure.
The Code provides that: “The following actions must be commenced within the following periods after the cause of action has accrued.” Section 380. “Within three years an action against an executor, administrator or receiver, or against the trustee of an insolvent debtor, appointed as prescribed by law in a special proceeding instituted in a court or before a judge, brought to recover a chattel or damages for taking, detaining or injuring personal property by the defendant or the person whom he represents.” Section 383, subdivision 4.
On referring to the pleadings, it appears to us that this action is for something more than damages for taking, detaining or injuring personal property. It is an action brought to set aside and declare void the judgments referred to, with the executions issued thereon and the sale made thereunder. The judgments, executions and sale are all regular, so far as the record discloses, and it is only because of facts alleged to exist dehors the record that their invalidity can be established. The power to go back of tlw record and to decree these judgments to be void is vested in a court of equity, and it was necessary that at least the sale should be adjudged fraudulent and void as a prerequisite to the granting of the other relief prayed for. The statute to which we have alluded does not prohibit a creditor from bringing action against an insolvent corporation, and prosecuting the same to judgment, or from issuing execution, when judgment is obtained, and selling sufficient property to satisfy the same. It is the transfer of the property by the officers of the corporation in contemplation of insolvency, or acts which in effect accomplish that result, which is prohibited. The action is, therefore, one in equity to have the judgments referred to, with trie executions and sale, adjudged void, and to recover the value of the property of the corporation transferred to these parties by means of the sale under the executions, and is not within the provisions of section 383, subdivision 4 of the Code. But, even if it were an action at law to *149 recover damages for taking, detaining or injuring personal property, pure and simple, we should still be of the opinion that the statute of limitations had not run at the time this action was commenced. As we have seen, the three years had only run from the time of the sale of the property on the executions. Three years had not expired after the appointment of Atkinson as receiver. The cause of action against him as receiver could not well accrue until his appointment. To hold that actions under this subdivision of the section might accrue before the appointment of a receiver would, in many instances, make the appointment of a receiver a bar to a right of recovery. As, for instance, in an action to recover damages for an injury to property, the limitation is six years. Section 382, subdivision 3.
After three years has expired and whilst there still remains three years within which to bring the action, a receiver is appointed of the property of the person charged with the injury to the property. So also in the case of a trustee of an insolvent debtor, which is included in the same subdivision. An insolvent debtor has but to make an assignment to a trustee for the benefit of creditors, in order to cut off and forever bar all claims upon which three years has already run after the right of action thereon accrued. It does not appear to us that such a result was intended or that such a construction should be given to these provisions. The three years within which the action must be brought as against the receiver, means three years after the cause of action accrued against him as such. This subdivision of the Code is' new, and so far as our examination has extended no authority has been found in which this precise question has been passed upon.
In the case of Losee v. Bullard (79 N. Y., 404, 406), the action was brought against a trustee of a manufacturing corporation. Rapallo, J., in delivering the opinion of the court, says “This action should have been brought within three years from the time the cause of action against him accrued.”
In the case of Duckworth v. Roach (8 Daly, 159), it was held that a cause of action against the trustees of a corporation, for failure to file an annual report, accrues immediately upon such failure, and the limitation to such actions of three years begins to run at that time and not from the time when the debt against the corporation accrued. This case was affirmed in the court of appeals (81 N. Y., 49).
Numerous other questions were raised and discussed which we have not thought it necessary to here consider. For the reasons stated, the judgments against the defendants Hart and Ellwanger, and the judgment in favor of the *150 receiver Atkinson, must be reversed and a new trial ordered, costs to abide event.
So ordered.
Barker, P. J., and Bradley, J., concur.