FRANK B. CHAPMAN, Appellant, *v.* PATRICK LYNCH, Respondent.

1. BUSINESS CORPORATIONS — PERSONAL LIABILITY OF DIRECTORS — STATUTE OF LIMITATIONS. An action to enforce the personal liability of a director of a business corporation organized under chapter 611 of Laws of 1875, for a debt of the corporation, on failure to file the annual report required by the statute, is an action upon a statute, for a penalty, and hence subject to the three years' provision (Code Civ. Pro. § 383, subd. 3 of the Statute of Limitations.

2. ULTRA VIRES CONTRACT—WHEN CAUSE OF ACTION ACCRUES. A contract by a business corporation, organized under the act of 1875, for the manufacture of salt, to receive money in special account upon deposit is *ultra vires*, and the depositor's right of action for money so received by the corporation accrues at once; and if default has then been made in filing the annual report, the three years' statute begins to run at once against an action to enforce a director's liability for the money deposited.

3. SUBSEQUENT FAILURES TO FILE ANNUAL REPORT. When the cause of action for the enforcement of the personal liability of a director of a business corporation ·organized under the act of 1875, by reason of an existing default in filing an annual report, has once accrued, and the three years' Statute of Limitations has run against it, the bar becomes complete, notwithstanding subsequent defaults in filing annual reports.

4. RUNNING OF STATUTE OF LIMITATIONS NOT EXTENDED. After a cause of action for the enforcement of a director's liability for a debt of a business corporation organized under the act of 1875, by reason of failure

to file an annual report, has once accrued and a director has become liable for the penalty, neither subsequent partial payments by the corporation, nor the crediting of interest by it upon the debt periodically, extends the running of the Statute of Limitations against the action for the penalty.

(Argued June 22, 1898; decided October 4, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fourth judicial department, entered October 9, 1895, affirming a judgment in favor of defendant entered upon a nonsuit granted at the Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin Nottingham* for appellant. A jury has once found upon the evidence contained in this record that the American Dairy Salt Company, Limited, received the plaintiff's money on deposit, and not as an ordinary loan, a finding which the evidence fully justifies. (*Payne* v. *Gardiner*, 29 N. Y. 146; *Boughton* v. *Flint*, 74 N. Y. 476; *Smiley* v. *Fry*, 100 N. Y. 262; *Matter of Waldron*, 28 Hun, 481; *West* v. *First Nat. Bank of E.*, 20 Hun, 408.) This is not a case where no construction of the evidence or inference drawn from the facts will justify a jury in finding that there was a deposit, and hence a nonsuit based upon a holding that there is no evidence of a deposit is erroneous. (*Bagley* v. *Bowe*, 105 N. Y. 171; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Wheaton* v. *Newcombe*, 16 J. & S. 215; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 206; *Layman* v. *Anderson & Co.*, 4 App. Div. 124.) The defendant cannot question the authority of Molloy to act for and bind the salt company as well as defendant in the transaction in question. (*Kraft* v. *Freeman P. & P. Assn.*, 87 N. Y. 628; *Fifth Nat. Bank of P.* v. *N. P. Co.*, 119 N. Y. 256; *Wilson* v. *M. E. R. Co.*, 120 N. Y. 145; *Martin* v. *N. F. P. M. Co.*, 122 N. Y. 165; *Hanover Nat. Bank* v. *Am. D. & T. Co.* 148 N. Y. 612; *Cutting* v. *Marlor*, 78 N. Y. 454; *Nat. Bank* v. *Navassa P. Co.*, 56 Hun, 136; *Second Nat. Bank* v. *P. & S. Mfg. Co.*, 18 N. Y. S. R.

954; *Holmes, B. & H.* v. *Willard,* 5 N. Y. Supp. 610; 125 N. Y. 75; *Brown* v. *M. & T. Nat. Bank,* 35 N. Y. S. R. 665.) The defendant can avail himself of no defense to the cause of action for the debt, which would not be equally available to the corporation if sued for the debt, his liability being co-extensive with the liability of the corporation. A contract of deposit is not *malum in se,* is not immoral or contrary to public policy, and defendant cannot stand upon a defense of *ultra vires,* which would not be available to the corporation. (*Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Woodruff* v. *Erie R. Co.,* 93 N. Y. 609; *Bissell* v. *M. S. & N. I. R. R. Co.,* 22 N. Y. 258.) The receipt of the money on deposit was not an act prohibited to the corporation, either by the terms or the intent of the statutory provisions on the subject. (*People* v. *Brewster,* 4 Wend. 498; *Potter* v. *Bank of Ithaca,* 5 Hill, 490; *Suydam* v. *Morris C. & B. Co.,* 6 Hill, 217; *State of Indiana* v. *Woram,* 6 Hill, 33; *Sackett's Harbor Bank* v. *Prest.,* etc., *Lewis County Bank,* 11 Barb. 213; *Steam Nav. Co.* v. *Weed,* 17 Barb. 378; *Sackett's Harbor Bank* v. *Codd,* 18 N. Y. 240; *Pardee* v. *Fish,* 60 N. Y. 265, 271; *Holmes, B. & H.* v. *Willard,* 5 N. Y. Supp. 611; 125 N. Y. 75.) If it is assumed that the American Dairy Salt Company, Limited, was prohibited by statute from receiving plaintiff's money as a deposit, still the transaction being only prohibited and not declared void, its illegality is not available to defendant as a defense in this action. In order to defeat a recovery by plaintiff, the receipt of his money as a deposit must have been not only prohibited, but also declared void by statute. Acts or contracts which are only *malum prohibitum* are not void unless expressly so declared by statute. (*Sackett's Harbor Bank* v. *Codd,* 18 N. Y. 240; 86 Hun, 319; 16 J. & S. 231; R. S. part I, ch. 1, tit. 20, §§ 4, 7 [7th ed.], vol. 3, pp. 21, 24; *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 68; Code Civ. Pro. §§ 1798, 1802; *State Bank* v. *Matthews,* 98 U. S. 621; *Nat. Bank* v. *Whitney,* 103 U. S. 99; *Davis S. M. Co.* v. *Best,* 30 Hun, 638; *Rome Sav. Bank* v. *Kramer,* 32 Hun, 270;

70

*Auburn Sav. Bank* v. *Brinkerhoff*, 44 Hun, 143.) Whether the transaction between plaintiff and the salt company was a deposit or a loan, the Statute of Limitations commenced to run in favor of the corporation and of the defendant at the same time, on or about July 11, 1888, when the demand of payment of . the balance of the money and the last payment were made, and the only difference ,in the situation of the corporation and the defendant in this respect is, that the statute will run in favor of the corporation in six years, and in favor of the defendant in three years. (*Jones* v. *Barlow*, 62 N. Y. 202; *Parker* v. *Stroud*, 98 N. Y. 379; *Rich* v. *Niagara Co. Sav. Bank*, 3 Hun, 481; *Bowe* v. *Gano*, 9 Hun, 6; *Hanover Bank* v. *Am. D. & T. Co.*, 148 N. Y. 612, 623.)

*Frank Hiscock* for respondent. The transaction between the plaintiff and the American Dairy Salt Company of February 11, 1882, was a loan and not a deposit. (Broom's Leg. Max. 465; *Chautauque Co. Bank* v. *Risley*, 19 N. Y. 370, 381; *Chapman* v. *Comstock*, 134 N. Y. 509.) Power in Molloy to receive deposits for the salt company could neither .be presumed nor given, the receipt of deposits by it being expressly forbidden by statute, and plaintiff being bound to take notice of this want of authority in the company, and in Molloy as its agent. (2 R. S. [5th ed.] 596, § 3; 2 R. S. 981, §§ 3, 4; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Adams* v. *Mills*, 60 N. Y. 533, 537; *Kirkland* v. *Kille*, 99 N. Y. 390; *M. E. R. Co.* v. *Kneeland*, 120 N. Y. 134, 143; *Jemison* v. *Citizens' Sav. Bank*, 122 N. Y. 135, 142; *Whitney Arms Co.* v. *Barlow*, 68 N. Y. 34; *Bruce* v. *Platt*, 80 N. Y. 381; *Wallace* v. *Walsh*, 52 Hun, 328; *Rudd* v. *Robinson*, 126 N. Y. 113.) Plaintiff cannot maintain an action as for a deposit. The salt company being prohibited from receiving deposits, plaintiff could not maintain an action based upon one with it. (*Barton* v. *Port J. & U. F. P. R. Co.*, 17 Barb. 397; *Dewitt* v. *Brisbane*, 16 N. Y. 508; *N. Y. L. Ins. & T. Co.* v. *Beebe*, 7 N. Y. 364; *N. Y. S. L. & T. Co.* v. *Helmer*, 77 N. Y. 64–71; *Pratt*

v. *Short,* 79 N. Y. 445; *Nassau Bank* v. *Jones,* 95 N. Y. 123; *Nat. Park Bank* v. *G. A. M. W. & S. Co.,* 116 N. Y. 281; *Jemison* v. *Citizens' S. Bank,* 122 N. Y. 135, 142; *White* v. *Franklin Bank,* 22 Pick. 181; *Oneida Bank* v. *Ontario Bank,* 21 N. Y. 490, 497; *Rome Sav. Bank* v. *Krug,* 102 N. Y. 331–335; *Roberts* v. *Ely,* 113 N. Y. 128; *Mills* v. *Mills,* 115 N. Y. 80; R. S. [7th ed.] 1531, 2124.) Plaintiff's debt, therefore, whether for a loan or money had and received to his use upon a prohibited deposit, became recoverable February 11, 1882, and was barred three years thereafter. (*Merchants' Bank* v. *Bliss,* 35 N. Y. 412; *Jones* v. *Barlow,* 62 N. Y. 202; *Rector, etc.,* v. *Vanderbilt,* 98 N. Y. 170, 175; *Losee* v. *Bullard,* 79 N. Y. 404.) The plaintiff's case is not within the statute on which he relies. (*O'Connor* v. *M. Bank,* 124 N. Y. 331; *Boughton* v. *Otis,* 21 N. Y. 261; *Garrison* v. *Howe,* 17 N. Y. 458; *Shuler & Hall Q. Co.* v. *Bliss,* 27 N. Y. 299; *Torbett* v. *Godwin,* 62 Hun, 407; *Gold* v. *Clyne,* 134 N. Y. 262; *Witherow* v. *Slayback,* 11 Misc. Rep. 526–528; 50 N. Y. 314; 106 N. Y. 277.)

HAIGHT, J.   This action was brought to recover the sum of $8,973.37, the amount due and owing the plaintiff by the American Dairy Salt Company, Limited, a business corporation organized under chapter 611 of the Laws of 1875. The action is sought to be maintained against the defendant upon the ground that he was a director of the corporation, and as such, in company with his associates, had failed to file the annual report required by the statute during the years 1881 to 1888, inclusive.

This is a twin action to that of *Chapman* v. *Comstock* (reported in 58 Hun, 325, and in this court in 134 N. Y. 509). The evidence reported upon this trial is in substance the same as that in the former case. The facts as stated in the former case, in this court, are as follows: " On and prior to February 11th, 1882, the plaintiff held a promissory note for $10,880.90 of the Onondaga Coarse Salt Association, of which Thomas Molloy was treasurer. That company was winding up its

business and desired to pay the note. The plaintiff asked Molloy if he had any place he could use the money for him, saying that he had no place for it and did not want to use it at that time. Molloy said he could take it for the American Dairy Salt Company, Limited, of which he was also treasurer. Further conversation took place with reference to the responsibility of the company and its directors, resulting in the plaintiff's leaving the money with that company, and it issued to him a pass book, in which was entered ' Frank B. Chapman in special account with the American Dairy Salt Company, Limited.' Under the credit column was entered, ' February 11, 1882, cash, $10,880.90,' and semi-annually thereafter interest was credited upon that amount at the rate of six per cent. The plaintiff was subsequently paid $4,300, April 30th, 1885 ; $1,000, June 1st, 1888, and $1,000, July 11th, 1888, for which receipts were given. Shortly after the last payment was made, the company failed and refused to pay the balance, and in October following a receiver was appointed."

It is alleged in the complaint that the money was deposited with the company by the plaintiff and was payable only upon demand. This allegation was controverted by the answer, in which it was alleged that the money was loaned to the company without time, and was recoverable by the plaintiff at any and all times without demand. It was further alleged in the answer that the corporation was not organized or authorized to do a banking business, or to receive deposits of money, but was forbidden by law from so doing, and that more than three years had elapsed after the cause of action accrued before the commencement of this action.

Upon the trial of the former action the case was submitted to the jury, which found a verdict in favor of the plaintiff. A motion for a new trial was then made upon the minutes of the court, upon the grounds specified in the Code, which motion was denied, and an appeal was then taken to the General Term from the judgment and from the order denying the new trial. The General Term reversed both the judgment and the order and awarded a new trial. In the order of rever-

sal, the General Term certified that it was held and decided, " 1. That the verdict ought to have been directed in favor of the defendant, or a nonsuit granted.  2. That the verdict is against the evidence.  3. That the several exceptions taken to the refusal to charge present error."

In the appeal which was brought from the order of the General Term to this court, it was here held that the appeal from the order denying the motion for a new trial, made upon the minutes, brought up for review in the General Term the question as to whether the verdict was against the weight of the evidence; and that question being properly before the court, its order reversing the judgment was not reviewable in this court, unless it appeared from the record that the order was affirmed as to the facts, or the appeal therefrom dismissed, following a long line of authorities, which are cited in the report of that case.

In this case another question is now presented, which was not then considered, and that is, assuming the money to have been delivered by the plaintiff to the corporation as a deposit and not payable until demanded, was such a contract valid and authorized, and did it prevent the running of the Statute of Limitations ?

The alleged deposit was made on the 11th day of February, 1882.  The directors of the corporation did not make the report required by the statute during the years 1881 to 1888, inclusive.  This action was commenced on the 27th day of September, 1889.  The action is for a penalty, depends wholly upon the statute, and falls within the third subdivision of section 383 of the Code of Civil Procedure.  (*Losee* v. *Bullard*, 79 N. Y. 404; *Knox* v. *Baldwin*, 80 N. Y. 610; *Duckworth* v. *Roach*, 81 N. Y. 49.)  The Statute of Limitations commenced to run from the time that the cause of action accrued to the plaintiff.  When did it accrue?  As we have seen, default in filing the report had already occurred when the deposit was made; but, under the alleged contract for deposit, it is claimed that no action could be maintained thereon until after demand had been made and payment refused.  The

plaintiff thus had it in his power to prevent the running of the statute by neglecting to make a demand for the money, and thus indefinitely perpetuate the liability of the defendant for the penalty. The claim of the defendant is that the position of the plaintiff is untenable; that if there was a contract that the money should be received by the corporation on deposit, it was *ultra vires*, unauthorized and void, and that an action as for money had and received was available to the plaintiff from the date of the deposit.

Section 13 of the act under which the corporation was organized provides that it shall be lawful for the corporation to borrow money for its legitimate purposes. It does not, however, authorize it to receive money upon deposit. It is contended on behalf of the appellant that the statute against unauthorized banking, which originally prohibited corporations from receiving deposits unless authorized so to do, was repealed by chapter 402 of the Laws of 1882. However that may be, the Revised Statutes, with reference to the general powers, privileges and liabilities of corporations, were left in force, and so remained until they were incorporated into the General Corporation Law of 1892.

The Revised Statutes, part I, chapter 18, title 3, section 3, first edition, page 600, provide: "In addition to the powers enumerated in the first section of this title and to those expressly given in its charter, or in the act under which it is or shall be incorporated, no corporation shall possess or exercise any corporate powers except such as shall be necessary to the exercise of the powers so enumerated and given.

"Section 4. No corporation created, or to be created, and not expressly incorporated for banking purposes, shall, by any implication or construction, be deemed to possess the power of discounting bills, notes or other evidences of debt, of receiving deposits, of buying gold and silver, bullion, or foreign coins, of buying and selling bills of exchange, or of issuing bills, notes, or other evidences of debt, upon loan, or for circulation as money." Here we have, in the first place, an express statutory provision prohibiting the corporation from

exercising powers not given to it, which are not necessary for the exercise of the powers for which it was created ; and, in the second place, an express prohibition against receiving deposits unless incorporated for banking purposes. Words could hardly be found that would make the meaning more clear.

The American Dairy Salt Company, Limited, was a business corporation, organized for the manufacture of salt. It was incorporated under a statute which authorized the formation of business companies, was adapted for the purposes of such organizations, and contained none of the safeguards which have always been exacted and required of corporations authorized to do a banking business or the receiving of the money of others on deposit for safe keeping or investment. We thus find a reason founded on public policy, for the prohibition contained in the statute referred to, applying to corporations not expressly incorporated under the statute providing for the incorporation of banks, which contains the safeguards exacted from such corporations which are to engage in the business of dealing with the money of others.

It appears to us that the corporation, in accepting the funds of the plaintiff, in special account upon deposit, exceeded its corporate power and engaged in a business in which it was not authorized, and that, consequently, its contract with the plaintiff, if such was its nature, was *ultra vires ;* if so, the plaintiff's right of action for the moneys delivered to the corporation at once accrued.

It is not our purpose here to enter upon any discussion as to whether the contract in question was *malum in se,* or was simply a contract unauthorized. The corporation is not here seeking to enforce any of the provisions of the contract. In either case the contract was *ultra vires* and formed no obstacle to an immediate action for the money. Neither do we deem it necessary to enter upon any extended reference to the authorities. The subject of *ultra vires* of contracts has recently been considered in this court in the case of *Bath Gas Light Company* v. *Claffy* (151 N. Y. 24) in which Chief

Judge ANDREWS and Judge VANN have engaged in an elaborate discussion of the authorities. The cases of *New York State Loan and Trust Company* v. *Helmer* (77 N. Y. 64), and *Pratt* v. *Short* (79 N. Y. 437), while distinguishable in many features, tend strongly to sustain the conclusion which we have reached.

It must be remembered that this action is prosecuted to recover a penalty. The action having once accrued and the statute run against it, the bar becomes complete, notwithstanding the subsequent defaults of the defendant and his associates in filing the annual reports called for by the statute. Neither do we understand that subsequent partial payments by the corporation upon account affect the running of the statute; they may, as to the corporation under its contract to pay, but cannot operate to extend the liability of the defendant for the penalty incurred by him. (*Rector, etc.,* v. *Vanderbilt,* 98 N. Y. 170–175; *Losee* v. *Bullard,* 79 N. Y. 404.)

Nor do we think that the crediting of the interest upon the account semi-annually affects the liability of the defendant. The cause of action having once accrued, and the defendant having become liable for the penalty, the statute commenced to run, and was not stopped by either credits of payment, or the charges of interest accrued thereafter made by the company.

The judgment should be affirmed, with costs.

All concur, except MARTIN, J., not sitting, and VANN, J., not voting.

Judgment affirmed.